Yitzchak Zelman, Esq.
California State Bar Number: 038827
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282
Fax: (732)298-6256
Email: yzelman@marcuszelman.com
*Attorney for Plaintiff*
*Josselin Lowell*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSSELIN LOWELL,**<br><br>Plaintiff,<br><br>-against-<br><br>**WESTLAKE FINANCIAL SERVICES, LOSS PREVENTION SERVICES, LLC, AND INDEPENDENT RECOVERY, INC.,**<br><br>Defendants. | Civil Case Number:<br><br><u>**CIVIL ACTION**</u><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Josselin Lowell, a resident of California, brings this complaint by and through the undersigned attorneys, against Defendants Westlake Financial Services, Loss Prevention Services, LLC, and Independent Recovery, Inc. (hereinafter "Defendants").

## **JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action under 28 U.S.C. § 1331, 15

1

U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201.  The Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

3. Plaintiff brings this action after the Defendants illegally repossessed her vehicle without having an enforceable security interest in the vehicle, thereby violating California Commercial Code § 9609 and the RFDCPA.  Plaintiff also brings a claim against Defendants Loss Prevention Services, LLC, and Independent Recovery Inc., for illegally repossessing her vehicle in violation of the Fair Debt Collection Practices Act, codified at 15 U.S.C. § 1692.  Finally, Plaintiff brings this action against the Defendants for conversion of her vehicle and trespass to chattels.

4. Plaintiff seeks statutory damages, punitive damages, actual damages, as well as attorneys fees and costs.

## PARTIES

5. Plaintiff Josselin Lowell is a natural person and a resident of Newport Beach, California and is a "Consumer" as defined by 15 U.S.C. §1692(a)(3).

6. Defendant Independent Recovery, Inc., (hereinafter referred to as "Independent Recovery"), is a repossession company, with its principal place of business in Rancho Santa Margarita, California.

7. Defendant Independent Recovery is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the enforcement of security interests, namely the repossession of vehicles by lenders.

8. For purposes of Plaintiff's claims under 15 U.S.C. § 1692f(6), Defendant Independent Recovery is a "debt collector," as defined in the FDCPA under 15 U.S.C. § 1692a(6).

9. Defendant Westlake Financial Services ("Westlake") is an auto lender, headquartered in Los Angeles, California.

10. Defendant Loss Prevention Services, LLC, (hereinafter referred to as "LPS"), is a limited liability company that specializes in nationwide recovery management, skip tracing and impound services on behalf of lenders and creditors, with its principal place of business in Grandville, Michigan.

11. Upon information and belief, Defendant LPS is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the enforcement of security interests, namely the repossession of vehicles by lenders.

12. For purposes of Plaintiff's claim under 15 U.S.C. § 1692f(6), Defendant LPS is a "debt collector," is defined under the FDCPA under 15 U.S.C. § 1692a(6).

**ALLEGATIONS OF FACT**

13. Plaintiff repeats, reiterates and incorporates the allegations contained in the above paragraphs with the same force and effect as if the same were set forth at length herein.

14. The Plaintiff owns a 2013 Audi A6 (hereinafter "the Vehicle"), which she purchased for her own personal use and enjoyment.

15. The Plaintiff purchased the Vehicle with cash from a mechanic shop after the prior owner abandoned the Vehicle without paying for repair services.

16. Upon information and belief, the mechanic shop, processed the necessary paperwork through the Department of Motor Vehicles ("DMV") to sell the vehicle, including providing notice to the purported lienholder, Defendant Westlake.

17. After providing such notice and waiting the statutorily required ninety (90) days without receiving any response from Westlake, the mechanic shop lawfully obtained title to the Vehicle.

18. Plaintiff subsequently purchased the Vehicle in good faith and for value, and the Vehicle was duly titled and registered in Plaintiff's name.

19. While owned by the Plaintiff, the Vehicle has always had a clean title and no liens recorded against the title.

20. Upon information and belief, however, and unbeknownst to Plaintiff, Westlake supposedly claims that it has a security interest in the Audi.

21. As a result, Westlake apparently contracted with Defendant LPS to repossess the Plaintiff's vehicle.

22. Upon information and belief, LPS does not perform any repossessions itself in California but contracts with repossession companies in all 50 states to carry out the actual repossessions, a fact which was known to Westlake.

23. Upon information and belief, after being contracted by Westlake to repossess the Plaintiff's vehicle, LPS arranged for Independent Recovery to carry out the actual repossession.

24. Upon information and belief, after being contracted by LPS to repossess the Plaintiff's vehicle, Independent Recovery proceeded to carry out the actual repossession.

25. On July 31, 2024, at or around 9:20 p.m., Plaintiff's stepson alerted Plaintiff that the Vehicle was being towed from Plaintiff's residence by a tow truck operator (hereinafter "Defendants' repo agent).

26. Believing the Audi was being stolen, Plaintiff immediately entered her other vehicle to pursue the tow truck.

27. Plaintiff drove around her neighborhood for approximately 10 minutes before locating the tow truck.

28. Plaintiff called 911 and explained to the operator that her car was being stolen. However, the operator informed Plaintiff that she had contacted the wrong jurisdiction and needed to contact the Newport Beach Police Department.

29. After following the tow truck for some time, Defendants' repo agent slowed his car, allowing the Plaintiff to approach.

30. Plaintiff pulled up alongside Defendants' tow truck and asked Defendants' repo agent to explain why he was taking her vehicle.

31. Defendants' repo agent informed Plaintiff that the Vehicle was being repossessed by Westlake.

32. Plaintiff explained that she owned the Vehicle outright and possessed the title issued by the DMV.

33. At this point, Defendants' repo agent agreed to pull over into a shopping center.

34. There, Plaintiff showed Defendants' repo agent a photograph of her title.

35. Defendants' repo agent acknowledged that he had seen similar situations before, but claimed he could not release the car because the Vehicle was already hooked up to his tow truck and he was being

6

recorded on camera.

36. Defendants' repo agent provided Plaintiff with the name of the repossession company that had hired him, Loss Prevention Services.

37. Defendants' rep agent also gave Plaintiff a business card for Independent Recovery, the towing company.

38. However, Defendants' repo agent refused to stop the repossession and to return the Plaintiff's vehicle, insisting that he had a repo order for the Vehicle.

39. The Defendants then held the Plaintiff's vehicle for days, causing her to suffer extensive actual damages, including by causing her to waste time and effort in having to regain possession of the Vehicle.

40. On August 2, 2024, at or around 6:00 p.m., another agent of the Defendants arrived at Plaintiff's home and presented her with documents to sign before releasing the Vehicle back into Plaintiff's possession.

41. However, when Plaintiff questioned the documents, Defendants' repo agent angrily snatched the papers back and attempted to re-hook the vehicle to his tow truck.

42. In response, Plaintiff entered the Vehicle to prevent it from being unlawfully taken for a second time.

43. At this point, a female passenger in Defendants' tow truck exited the

truck.

44. In fear of the situation escalating, Plaintiff contacted law enforcement.

45. Plaintiff subsequently started suffering from a panic attack, exited the Vehicle, and started walking back to her residence.

46. Defendants' repo agent started threatening Plaintiff, even taking photos of her home while yelling "*you she should be scared!*"

47. When Newport Beach Police arrived, Defendants' repo agent falsely claimed that Plaintiff had refused to sign the paperwork and tore it.

48. Plaintiff tried to provide further explanation, but the police officer sided with Defendants' repo agent and ordered Plaintiff to sign the documents without proper review.

49. Plaintiff subsequently suffered a severe panic attack to which paramedics had to respond.

50. Plaintiff declined hospital transport but was advised to seek further medical attention due to high blood pressure and an increased heart rate.

51. The Defendants' actions harmed the Plaintiff, causing her to suffer extensive actual damages.

# COUNT I
# VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
# 15 U.S.C. §1692f *et seq.*
# (Against Independent Recovery and LPS)

52. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

53. Plaintiff brings this Count against Defendants Independent Recovery and LPS.

54. Section 1692f of the FDCPA prohibits debt collectors from using any unfair or unconscionable means to collect or attempt to collect any debt.

55. Section 1692f(6) of the FDCPA specifically prohibits debt collectors from taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if:

   (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; or
   (C) the property is exempt by law from such dispossession or disablement.

56. At the time of the repossession, the Defendants did not have an enforceable security interest in the Plaintiff's vehicle, but they seized the Vehicle anyway and then held that vehicle even after they were alerted that they had no right to take the Vehicle.

9

57. Furthermore, because the Defendants did not have an enforceable security interest in the Vehicle, the Vehicle was clearly exempt by law from dispossession.

58. As a result, Defendants LPS and Independent Recovery violated 15 USC § 1692f(6) when they repossessed the Plaintiff's vehicle on July 31, 2024.

59. By illegally repossessing the Plaintiff's vehicle in violation of the FDCPA, Defendants harmed the Plaintiff, in subjecting the Plaintiff to improper and deceptive collection activity, in violation of the Plaintiff's statutorily created rights to be free from such a debt collector's inappropriate attempts to collect a debt, and in subjecting the Plaintiff to false, deceptive, unfair and unconscionable means to collect a debt.

60. Defendants' illegal activity also harmed the Plaintiff by depriving her of the use of her vehicle and her possessions, and by causing her to suffer, anger, anxiety, emotional distress, frustration and embarrassment, and by causing her to waste time and effort in having to regain possession of the vehicle.

61. By reason thereof, Defendants Independent Recovery and LPS are liable to the Plaintiff for judgment that Defendants' conduct violated 15 USC §1692f, statutory damages, actual damages, costs and attorneys' fees.

10

62. As a direct and proximate result of the Defendants' repossession, Plaintiff suffered damages including the loss of use of the Vehicle, the loss of the right to pre repossession judicial process, and damage to her Vehicle, as well as mental and emotional harm including severe anxiety, frustration, and embarrassment.

## COUNT II
## WRONGFUL REPOSSESSION
### California Commercial Code § 9609 *et seq.*
### (Against All Defendants)

63. The Plaintiff repeats and re alleges the preceding paragraphs of this Complaint and incorporates the same herein.

64. California only permits self help repossession of consumer motor vehicles by a secured creditor with an enforceable security interest. *See,* California Commercial Code § 9609.

65. At the time of the repossession, the Defendants did not have an enforceable security interest in the Plaintiff's vehicle, but they seized the Vehicle anyway and then held that vehicle even after they were alerted that they had no right to take the Vehicle.

66. As a direct and proximate result of the Defendants' unlawful repossession, Plaintiff suffered damages including the loss of use of the Vehicle and her possessions, the loss of the right to pre repossession

11

judicial process, damage to the Vehicle, as well as mental and emotional harm including frustration and embarrassment, and the time wasted in securing the return of her vehicle.

## COUNT III

## COMMON LAW TRESPASS TO CHATTEL

### (Against All Defendants)

67. The Plaintiff repeats and re alleges the preceding paragraphs of this Complaint and incorporates the same herein.

68. Defendants intentionally took possession of Plaintiff's vehicle and its contents.

69. At the time Defendants took possession of Plaintiff's vehicle and its contents, Plaintiff did not consent to Defendants' possession of her vehicle or its contents.

70. Defendants had no legal authority to take possession of Plaintiff's vehicle or its contents.

71. By taking possession of Plaintiff's vehicle and its contents, Defendants "dispossessed" Plaintiff of her vehicle and its contents.

72. As a result of Defendants' dispossession, Plaintiff was deprived of the use of her vehicle and its contents for a period of time.

73. As a result of Defendants' unlawful dispossession, Plaintiff suffered anger, frustration, emotional distress, severe anxiety, and stress, by

damaging the Vehicle, by depriving her of the loss of use of her vehicle and her possessions, and in taking the necessary steps and time to force Defendants to return the vehicle.

74. By intentionally dispossessing Plaintiff of her vehicle and its contents without legal authority to do so, Defendants committed trespass to chattel.

75. Defendants' actions in taking Plaintiff's vehicle without authority, is evidence that its conduct was guided by willful or wanton disregard of the interests of others, particularly after the Defendants refused to immediately return the vehicle despite being informed that the vehicle had unlawfully repossessed.

76. In California, secured creditors are liable for the torts committed by their agents.

77. Westlake, as the creditor that hired LPS and Independent Recovery, is therefore also liable for Defendants' illegal repossession of his vehicle.

## COUNT IV

## CONVERSION

**(Against All Defendants)**

78. As set forth above, each of the Defendants wrongfully repossessed the Plaintiff's vehicle and personal property without any present right to possession of that vehicle or personal property.

13

79. Plaintiff was entitled to immediate possession of her vehicle and personal property when it was seized by Defendants.

80. Defendants wrongfully deprived Plaintiff of possession of her vehicle and personal property by seizing it without any present right to do so.

81. The Defendants then held Plaintiff's vehicle and personal property for a period of time, thereby exercising control over the Plaintiff's property and vehicle.

82. Defendants' conversion of Plaintiff's vehicle harmed Plaintiff, in subjecting the Plaintiff to improper and deceptive collection activity, in violation of the Plaintiff's statutorily created rights to be free from such a debt collector's inappropriate attempts to collect a debt, in depriving her of the use of her vehicle and possessions, and by subjecting her to unfair and unconscionable means to collect a debt.

83. Defendants' illegal activity also harmed the Plaintiff by causing her to suffer damage to the Vehicle, anger, severe anxiety, emotional distress, frustration and embarrassment, and to suffer the time wasted in trying to recover her vehicle.

84. By reason thereof, Defendants are liable to Plaintiff for judgment that Defendants wrongfully converted the Plaintiff's vehicle, actual damages, punitive damages, costs and attorneys' fees.

# COUNT V

## Violations Of The Rosenthal Fair Debt Collection Practices Act

### (Against All Defendants)

85. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.

86. Cal. Civ. Code §1788.17 mandates that every person or entity collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code statutory regulations contained within the FDCPA, 15 U.S.C. § 1692 et seq.

87. As set forth above, Section 1692f of the FDCPA prohibits debt collectors from using any unfair or unconscionable means to collect or attempt to collect any debt.

88. Section 1692f(6) of the FDCPA specifically prohibits debt collectors from taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if:

    (B)    there is no present right to possession of the property claimed as collateral through an enforceable security interest; or

   (C) the property is exempt by law from such dispossession or disablement.

89. At the time of the attempted repossession, the Defendants did not have the present right to possession of the Plaintiff's vehicle and that vehicle was therefore also exempt by law from repossession.

90. As a result, the Defendants violated 15 USC § 1692f(6) when they repossessed the Plaintiff's vehicle on July 31, 2024.

91. Defendants' actions, listed above, violated the FDCPA and therefore also the RFDCPA, and were done knowingly and willfully.

92. By attempting to illegally repossess the Plaintiff's vehicle in violation of the RFDCPA – and by subsequently illegally repossessing the vehicle - Defendants harmed the Plaintiff, in subjecting the Plaintiff to improper and deceptive collection activity, in violation of the Plaintiff's statutorily created rights to be free from such a debt collector's inappropriate attempts to collect a debt, and from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.

93. Defendants' illegal activity also harmed the Plaintiff by causing her to suffer anger, severe anxiety, emotional distress, frustration and embarrassment, by damaging the Vehicle, by depriving her of the use of her vehicle and the right to pre-repossession judicial process, and wasting the Plaintiff's time needed to recover her vehicle and

possessions.

94. By reason thereof, Defendants are liable to the Plaintiff for judgment that Defendants' conduct violated the RFDCPA, statutory damages, punitive damages, actual damages, costs and attorneys' fees.

## DEMAND FOR TRIAL BY JURY

95. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

    (a)    awarding the Plaintiff actual damages incurred;

    (b)    awarding the Plaintiff statutory damages, along with the attorneys' fees and expenses incurred in bringing this action;

    (c)    awarding punitive damages;

    (c)    Awarding pre-judgment interest and post-judgment interest; and

    (f)    Awarding the Plaintiff such other and further relief as this Court may deem just and proper.

Dated: May 12, 2025        /s/ Yitzchak Zelman, Esq.
                                    MARCUS & ZELMAN, LLC
                                    701 Cookman Avenue, Suite 300

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

Asbury Park, New Jersey 07712
Phone: (732) 695-3282
Fax: (732)298-6256
Email:       yzelman@marcuszelman.com
Attorney for Plaintiff
Josselin Lowell